UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

No. 1:22-CR-000152-APM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S** |
| | ) | **SENTENCING MEMORANDUM** |
| WILLIAM TODD WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, William Todd Wilson, (the "Defendant" or "Mr. Wilson"), by and through undersigned counsel, respectfully submits this Sentencing Memorandum pursuant to 18 U.S.C. § 3661, to highlight aspects of Mr. Wilson's case and provide additional information for the Court's consideration. This Memorandum references the various factors found in the Federal Sentencing Guidelines Manual and 18 U.S.C. § 3553(a), relevant in fashioning a sentence for the Defendant that is, "sufficient, but not greater than necessary" to satisfy the purposes of 18 U.S.C. § 3553(a)(2). Simply stated, the sentence ultimately imposed by the Court should be the least restrictive necessary to comply with Congressional intent. Id.

## I.   INTRODUCTION

On January 6th, 2021, William Todd Wilson joined other members of the Oath Keepers and entered the U.S. Capitol in an attempt to prevent Congress's certification of President Biden's election. Mr. Wilson, who served his country honorably in the U.S. Army and as an emergency responder, originally joined the Oath Keepers organization because he

1

believed he could continue to serve his country and his community by working with the Oath Keepers in disaster relief.  His continued involvement in the Oath Keepers in 2019 and 2020, and particularly his willingness to follow Stewart Rhodes, led Mr. Wilson down a path that resulted in his guilty plea to Seditious Conspiracy and Obstructing an Official Proceeding and the sentencing he now faces before this Court.

Mr. Wilson deeply regrets his actions on January 6th and is prepared to accept the consequences for his role in the offense. He urges the Court to consider his cooperation with the Government's investigation and prosecution of others as evidence of his remorse and acceptance of responsibility.  He further requests the Court to weigh his history and characteristics, along with the sentences of other cooperating defendants, as sentencing factors that justify a non-custodial sentence in his case.

### A. The Defendant Should be Sentenced to a Term of Probation

For the reasons set forth herein, Mr. Wilson respectfully requests a sentence of probation, with a period of home confinement in lieu of incarceration. This sentence appropriately reflects the mitigating factors in this case, including Mr. Wilson's lack of criminal history, his military service and work as an emergency responder, the collateral consequences of his guilty plea (including the loss of Veterans Affairs benefits), and his acceptance of responsibility. A probationary sentence is further supported by Mr. Wilson's cooperation (USSG § 5K1.1), military service (USSG § 5H1.11), and mental health conditions (USSG § 5H1.3). Such a sentence is

sufficient, but not greater than necessary, to achieve the purposes of sentencing under 18 U.S.C. § 3553(a)(2).

Mr. Wilson has been determined to be a Total Offense Level 15 and Criminal History Category I, with a corresponding calculated Guideline range of 18 to 24 months imprisonment. (Presentence Investigation Report ("PSR"), ECF Doc. No. 31, ¶ 195).  In their recently filed Sentencing Memorandum, (ECF Doc. No. 38), the Government has recommended a one level upward departure and moved for a three level downward departure pursuant to USSG § 5K1.1. The Government argues that the court adopt a sentencing Guideline range that reflects a total offense level of 13 in Zone C and impose a sentence of 12 months incarceration. Mr. Wilson respectfully requests that the Court adopt the Government's recommendation but go further in reducing Mr. Wilson's sentence by imposing a two level downward variance for a total offense level of 11 in Zone B.  In lieu of the Government's request for 12 months imprisonment, Mr. Wilson requests that the Court impose 36 months of probation with the first 12 months to be served under a period of home confinement.  As the Government acknowledges in their own sentencing memo, all previously sentenced cooperating defendants have received a probationary sentence, some with periods of home confinement and others without.  Sentencing Mr. Wilson to a period of probation with a significant period of home confinement would align with the precedent set by this Court.

## II. FRAMING AN APPROPRIATE SENTENCE: THE UNITED STATES SENTENCING GUIDELINES AND 18 U.S.C. § 3553(a)

Since the Court in <u>Booker</u> held that the Sentencing Guidelines are merely advisory, "sentencing courts have discretion to sentence defendants within the statutory range, regardless of whether the sentence falls within the Guidelines range or without." <u>United States v. Booker</u>, 543 U.S. 220 (2005); <u>see also</u> <u>U.S. v. Dorcely</u>, 454 F.3d 366 (D.C. 2007). Consideration of the Guidelines, which is but one of the seven factors listed in 18 U.S.C. § 3553(a), is only "the starting point and the initial benchmark." <u>Gall v. U.S.</u>, 552 U.S. 38, 49 (2007). The court "must calculate and consider the applicable Guidelines range, but is not bound by it." <u>Dorcely</u>, 454 F.3d at 381 (internal quotation marks and citation omitted).

### A. <u>The Counts of Conviction and Terms of the Plea Agreement</u>

On May 4, 2022, Mr. Wilson pled guilty to a two-count Criminal Information. Count One charged Mr. Wilson with Seditious Conspiracy in violation of 18 U.S.C. 2384. Count Two charged him with Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2).

As detailed in the Presentence Investigation Report ("PSR") (ECF Doc. No. 31, ¶¶ 5-8), the plea agreement stipulated that the applicable offense Guideline for the Seditious Conspiracy conviction was USSG § 2J1.2 (Obstruction of Justice), with a base offense level of 14.

While the initial calculation under the plea agreement resulted in a total offense level of 26 and a recommended sentence of 63-78 months imprisonment (ECF Doc. No. 31, ¶¶ 8-9), this calculation was impacted by the D.C. Circuit's subsequent decision in United States v. Brock, 94 F.4th 39, 59 (D.C. Cir. 2024).

**B.  Sentencing Guidelines Calculation**

As noted above, the Brock decision significantly altered the Guideline calculation in Mr. Wilson's case

**1. The Impact of United States v. Brock on the  Total Offense Level.**

The   Brock   decision   applies   to   two   specific   offense characteristics in USSG § 2J1.2 that the parties stipulated to in the plea   agreement:   USSG   §   2J1.2(b)(2)(three   level   increase   for substantial interference with justice) and 2J1.2(b)(1)(B)(eight level increase for causing/threatening to cause injury or damage in order to obstruct  the  administration  of  justice).   Id. at 59 ("...Section 2J1.2's   text,   commentary,   and   context   establish   that   the 'administration of justice' does not extend to Congress's counting and certification of electoral college votes…").   Thus,  Mr.  Wilson's resulting Total Offense level in the final PSR is 11 levels lower than that calculated in the plea agreement.

**2. The Other Applicable Specific Offense Characteristics.**

Two stipulated offense characteristics remain applicable: USSG § 2J1.2(b)(3)(C)  (offense  involved  extensive  scope,  planning,  and preparation) (ECF No. 116 at 3); and USSG § 3C1.1 (obstruction of

justice by destroying evidence). These enhancements add four levels to the base offense level of 14 under USSG § 2J1.2, resulting in an adjusted offense level of 18. (ECF Doc. No. 31 at ¶ 21).

### 3. Acceptance of Responsibility.

Mr. Wilson contends that the PSR correctly provides for the full 3 level reduction for his acceptance of responsibility. (ECF Doc. No. 31 at ¶ 123; 140-141). The resulting total offense level with the 3 level reduction for acceptance of responsibility applied is 15. Because Mr. Wilson has no prior criminal history, his criminal history category is I. Thus, prior to the departures recommended by the Government, his advisory sentencing Guideline range is 18-24 months imprisonment, which falls within Zone D of the sentencing table.

The Government's Sentencing Memorandum argues for a one level upward departure on the basis of Note 4 to Section 3A1.4 of the Sentencing Guidelines and a downward departure of 3 levels pursuant to Section 5K1.1. If the Court adopts the Government's recommendations, Mr. Wilson's Guideline range would be level 13 in Zone C of the sentencing table.

### C. **The 18 U.S.C. § 3553(a) Sentencing Factors**

Ultimately, the Court must weigh the factors set forth in 18 U.S.C. § 3553(a) to determine the appropriate sentence in Mr. Wilson's case. Those factors weigh in favor of a downward variance from Zone C of the Sentencing Guidelines to Zone B and imposition of a non-custodial sentence.

## 1. Nature and Circumstances of the Offense.

Mr. Wilson's offense: participating in the riot at the Capitol on January 6, 2021 is extremely serious.  The Statement of Facts submitted at the time of Mr. Wilson's guilty plea and the summary of the offense conduct in the PSR make clear his role in the Oath Keepers plans to disrupt the certification vote and prevent the peaceful transition of power.  Mr. Wilson acknowledged the nature and circumstances of his conduct by proffering without protection and pleading guilty to Seditious Conspiracy at an early stage in the Government's prosecution of Stewart Rhodes and other members of the Oath Keepers.  Mr. Wilson's guilty plea not only exposed him to significant punishment, but it has resulted in devastating collateral consequences.  Mr. Wilson has been ostracized in Newton Grove, North Carolina, where he has spent most of his life.  He lost benefits from the Veterans Affairs Administration (VA) that he relied on for income and for access to mental health care as a direct result of his guilty plea to Seditious Conspiracy. (ECF Doc. No. 31 at ¶ 164, 169).

## 2. The History and Characteristics of the Defendant.

### a. Mr.Wilson Served his Country Honorably

Notwithstanding the conduct giving rise to the instant offense, Mr. Wilson demonstrated dedication and respect for his country through his military service. He served in the United States Army from January 9, 2000 to February 7, 2004, when he was honorably discharged.  (ECF Doc. No. 31 at ¶ 177).  Mr. Wilson was a Calvary Scout and saw combat during his tour in Iraq.  In 2003, Mr. Wilson suffered injuries as a

result of an improvised explosive device (IED) explosion. <u>Id</u>. at ¶ 161.

Prior to enlisting in the U.S. Army, Mr. Wilson completed basic law enforcement training at Sampson Technical College in Clinton, North Carolina. He went on to serve as a police officer in a small eastern North Carolina town before joining the Army. After leaving the Army, Mr. Wilson became certified as a Firefighter and Emergency Medical Technician ("EMT"). <u>Id</u>. at ¶ 174.

### b. Mr. Wilson's Service Resulted in PTSD

Mr. Wilson witnessed a fellow firefighter killed by a falling tree in 2006. That incident, along with traumas he suffered during combat in Iraq, resulted in a diagnosis of Post Traumatic Stress Disorder ("PTSD"). (ECF Doc. No. 31 at ¶ 166). Mr. Wilson submitted to a mental health assessment on August 18, 2022 as part of the conditions of his pretrial release and was diagnosed with PTSD and panic disorder. <u>Id</u>. at ¶ 168. On January 17, 2023, Mr. Wilson received another psychiatric evaluation from First Step Services, LLC in Raleigh, North Carolina. <u>Id</u>. at ¶ 169. That evaluation again diagnosed Mr. Wilson with PTSD due to his experiences in combat and as a firefighter. The evaluation noted that, unfortunately, Mr. Wilson lost access to VA benefits as a result of his guilty plea in this case.

### c. Collateral Consequences of Mr. Wilson's Plea

Mr. Wilson began receiving 100% disability benefits from the VA in 2018. (ECF No. 31 at ¶ 164). As a result of the Seditious

Conspiracy charge filed against Mr. Wilson and his corresponding guilty plea, the VA terminated all of Mr. Wilson's benefits, including his disability benefits. Mr. Wilson has suffered both financially and psychologically from the loss of these benefits.

Mr. Wilson's participation in the instant offenses also ended his relationship with his brother, Lee. Id. at ¶ 152. He reports to undersigned counsel that most of his friends and neighbors in Newton Grove, NC no longer associate with him because of his conduct. Mr. Wilson has been punished over the last two (2) years by these lost relationships. On a positive note, Mr. Wilson has been able to return to work for AutoZone after initially losing the job due to the charges in this case.

### d. Mr. Wilson's Lack of Criminal History

Mr. Wilson has no prior criminal convictions on his record. (ECF Doc. No. 31 at ¶ 144). For his entire life, Mr. Wilson not only followed the law, but he also put himself in harm's way to protect his country and fellow citizens. Such a commendable life of service makes the offense conduct in this case hard to reconcile with the rest of Mr. Wilson's life. Mr. Wilson's choice to join the Oath Keepers and follow Stewart Rhodes provides the explanation for his crimes in this case.

### e. Mr. Wilson's Character

As the character letters submitted on Mr. Wilson's behalf make clear, he is a person that is committed to serve others. See Exhibits 1-5 (Character Letters). He risked his life to serve his country

during his deployment to Iraq.  After being honorably discharged from the Army, Mr. Wilson continued his service by becoming a firefighter. Cynthia Smith's character letter describes how Mr. Wilson came to volunteer at Hobbton Elementary School. See Exhibit 3, Smith Letter. Despite Mr. Wilson's conviction in this case, the Sheriff of Sampson County, North Carolina, Jimmy Thornton, and the former mayor of Newton Grove, North Carolina, Barbara Burch, were both willing to write character letters on Mr. Wilson's behalf. See Exhibits 1 and 2, Thornton and Burch Letters.  They describe him as a law-abiding person and remember his work as a volunteer firefighter in Newton Grove.

Mr. Wilson's father, William Wilson, writes of the changes he observed in his son after he returned from Iraq, including how the combat tour contributed to Mr. Wilson's suffering from PTSD.  It is interesting to note his father's comment on the change in Mr. Wilson's personality, and compare it to what Barbara Burch recalls about the impact of Iraq on Mr. Wilson:  that he became a follower and not a leader.  Unfortunately, it appears that Mr. Wilson's time in the Army made him susceptible to recruitment by Stewart Rhodes and the Oath Keepers.

### f. Mr. Wilson's Involvement in the Oath Keepers

Each person who wrote a character letter on Mr. Wilson's behalf noted how surprised they were that he participated in the January 6th riot. See Exhibits 1-5 (Character Letters). Mr. Wilson's offense conduct related to January 6th is solely attributable to his

membership in the Oath Keepers.  As a former soldier, the Oath Keepers paramilitary style of organization attracted Mr. Wilson.

Mr. Wilson fell under the sway of co-defendant Stewart Rhodes when he joined the Oath Keepers in 2016.  He reported to undersigned counsel that his introduction to the Oath Keepers was a call for disaster assistance after a Florida hurricane.  Mr. Wilson considered the Oath Keepers a well organized group of former military and law enforcement that could assist during disasters.  In his mind, at least prior to 2020, the Oath Keepers were not overtly political.

However, during the turmoil after the stay-at-home orders of the Covid-19 Pandemic and the Black Lives Matter protests of that summer, the Oath Keepers became increasingly political.  Their opposition to the Black Lives Matter protests was a step in the Oath Keepers movement to overt support for President Donald Trump during and after the 2020 election.

Stewart Rhodes turned his attention to the Presidential election in November 2020 and Mr. Wilson followed Rhodes and followed suit. However, Mr. Wilson's motivations for his actions leading up to January 6, 2021 were those of someone who considered himself a patriot.  The paramilitary nature of the Oath Keepers also made Mr. Wilson, as a former soldier, more susceptible to follow the orders of Rhodes.  But most importantly for understanding Mr. Wilson's criminal conduct, he believed the narrative being fed to him by Rhodes.  That narrative helps provide context to Mr. Wilson's actions leading up to January 6th and his decision to enter the Capitol during the riot that

ensued.  Mr. Wilson followed orders from Oath Keeper's leadership when he went to the Capitol on January 6th and when he disposed of his cell phone after the event.  (ECF No. Doc. 31 at ¶ 64).

### g. Mr. Wilson's Cooperation with the Government's Prosecution

Mr. Wilson pled guilty by criminal information on May 4, 2022. That plea, which included one count of Seditious Conspiracy and one count of Obstruction of an Official Proceeding, came after extensive cooperation with the Government's investigation by Mr. Wilson.  He was debriefed by the Government on at least five (5) occasions, including two debriefs in Washington, D.C.   In addition,agreed to cooperate without the benefit of a proffer agreement, which the Government declined to offer despite his attorneys' requests.

The Government required Mr. Wilson to plead guilty to Seditious Conspiracy, the most serious charge filed in the January 6th prosecutions, to continue on the path of cooperation. Mr. Wilson's plea occurred before he testified before the Grand Jury on June 22, 2022.  The Grand Jury returned a superseding indictment, based in part on Mr. Wilson's testimony, against Stewart Rhodes and a number of co-defendants.   Ultimately, a jury convicted Rhodes of Seditious Conspiracy and other offenses.  Unlike Rhodes, Mr. Wilson pled guilty to Seditious Conspiracy as part of a plea agreement with the Government.  He did so at a time when many other Oath Keepers, including those in leadership positions, were preparing for trials. Mr. Wilson's willingness to step forward to assist the Government, even when that path required him pleading guilty to Seditious

Conspiracy, should weigh in his favor as the Court considers the appropriate sentence in this case.

### 3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law.

Mr. Wilson's cooperation with the Government and his history and characteristics are relevant considerations for the Court as it weighs the seriousness of the offense and promotes respect for the law through the sentence imposed. While Mr. Wilson's crimes are serious, his public efforts to right the wrongs he committed through his guilty plea and continued cooperation promote respect for the law. His history of service to his country, and the PTSD diagnosis that such service caused, gives context to Mr. Wilson's participation in the instant crimes. Taking these factors into account, a sentence of probation, with a lengthy period of home confinement in lieu of incarceration, would be a carefully crafted sentence that reflects the seriousness of Mr. Wilson's actions while also promoting respect for the law.

### 4. The Need for the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from Further Crimes of the Defendant.

Sentencing Mr. Wilson to 12 months of home confinement, followed by a lengthy period of probation, would afford adequate deterrence to the criminal conduct of others. Mr. Wilson has been individually deterred from ever engaging in criminal conduct in the future from both the serious consequences he faces in this Court from his guilty plea, as well as the dramatic and life-altering collateral consequences he has lived with in the almost four years since he

entered the Capitol on January 6th.  Mr. Wilson's compliance with the terms of his pretrial release conditions since May 4, 2022 (ECF Doc. No. 31 at ¶ 12), and the fact that he has already paid $2,000.00 in restitution to the United States Department of Treasury(See ECF Doc. No. 37 (order allowing pre-sentence payment)), are evidence that Mr. Wilson takes seriously his obligation to comply with the law.

If Mr. Wilson receives a long period of home confinement after he cooperated with the Government, it would demonstrate the seriousness with which Courts address this kind of criminal conduct while also fairly crediting Mr. Wilson's cooperation and his specific history and characteristics.  Such a sentence would deter the criminal conduct of others while also promoting respect for the law.

### 5.  The Need for the Sentence Imposed to Provide the Defendant with Necessary Medical Care.

Mr. Wilson suffers from both mental and physical health conditions that would make it difficult for him to serve a period of incarceration.  He suffers from the effects of head, neck and back injuries sustained during his Iraq combat tour in 2003 and a more recent boating accident in 2022.  (ECF Doc. No. 31 at ¶ 161-162).  Mr. Wilson has a well documented PTSD diagnosis that requires ongoing treatment through medication and counseling.  Id. at ¶ 166-169.  A sentence of home confinement in lieu of imprisonment is necessary to ensure Mr. Wilson continues to receive the medical care he requires.

### 6. The Advice of the Guidelines: The Guidelines Offer Two Independent Reasons for a Below Guidelines Sentence in Mr. Wilson's Case.

Chapter 5, Part H of the United States Sentencing Guidelines manual addresses the relevance of certain specific offender characteristics in sentencing." <u>See</u> USSG § 5H, Introductory Commentary. The Sentencing Guidelines go on to categorize specific offender traits into three categories: (1) characteristics that should never be considered at sentencing; (2) characteristics that are reflected in the guidelines and are therefore generally inappropriate to consider at sentencing; and (3) characteristics that are taken into account by the guidelines only to the extent that they have relevance at sentencing. <u>See Id</u>. It is appropriate for a sentencing court to consider specific offender characteristics in this third category at sentencing that may warrant a sentence outside the applicable Guideline range. Two specific offender characteristics in this latter category are present in Mr. Wilson's case to a degree that warrants a sentence below the guideline range after a downward variance: (a) mental and emotional condition; and (b) prior military service. These two factors are particularly relevant to Mr. Wilson's sentence because they directly impacted his decision to participate in the offense conduct.

### a. USSG § 5H1.3: Mental and Emotional Conditions

Mr. Wilson suffers from Post Traumatic Stress Disorder (PTSD) that is the result of trauma he sustained during combat in Iraq and then later as a firefighter. (PSR, ECF Doc. No. 31 at ¶ 169). In 2006, Mr. Wilson saw a fellow firefighter and friend killed by a falling tree during an emergency response call. He was nearby when

the tree fell, and the trauma from this incident led Mr. Wilson to seek psychological help. Id. at ¶ 166. Mr. Wilson reports that this incident as a firefighter, combined with traumatic events he experienced in the U.S. Army fighting in Iraq, caused him tremendous psychological difficulties. While serving in Iraq as a U.S. Army Cavalry Scout, Mr. Wilson engaged in direct combat. In 2003, he suffered a concussion and injuries to his neck and back as the result of an IED blast. Id. at ¶ 161. Following his initial diagnosis of PTSD in 2006, Mr. Wilson saw a counselor once a month for over ten (10) years.

Mr. Wilson submitted to a mental health assessment at Unlimited Access in Dunn, North Carolina on August 18, 2022 as part of his pretrial conditions of release. That assessment diagnosed Mr. Wilson with PTSD and panic disorder. Id. at ¶ 168. A subsequent evaluation by First Step Services, LLC in Raleigh, North Carolina, again diagnosed Mr. Wilson with PTSD related to trauma he suffered in the military and as a firefighter. Id. at ¶ 169.

### b. USSG §5H1.11: Military Service

Mr. Wilson served a combat tour in Iraq. As described in the proceeding section, his combat experience is a contributing factor in his PTSD condition. In addition, as undersigned counsel has previously argued, Mr. Wilson's service in the U.S. Army initially attracted him to the Oath Keepers and made him more susceptible to follow the orders of Stewart Rhodes and others.

It is evident from the character letters submitted by family,

and those that have known Mr. Wilson most of his life, that his combat tour impacted his personality. Undersigned counsel submits that the totality of Mr. Wilson's personal history leads to a conclusion that his PTSD had a direct impact on his decision to participate in the events of January 6, 2021.

### c. The Court Should Apply a Two Level Downward Variance in Mr. Wilson's case.

Mr. Wilson spent most of his adult life serving his country and those around him. He has no prior criminal record. But as he reports, the anxiety he felt during the Covid-19 pandemic and resulting lock-down, in combination with the civil unrest during the summer of 2020, made Mr. Wilson vulnerable to believe the election fraud claims of Stewart Rhodes. Mr. Wilson's conditioning to follow orders in the military made him prone to accept Stewart Rhodes's leadership. It was this combination of effects from his military service and the climate across the nation at that time, that overrode Mr. Wilson's law abiding character and resulted in the offense now before the Court.

Given the unique interplay of Mr. Wilson's military service, his mental health condition, and their impact on his decision to participate in the January 6th plot, there is a basis for the Court to find that a downward variance is appropriate and sentence Mr. Wilson below the Guideline range recommended by the Government.

### 7.  The Need to Avoid Unwarranted Sentencing Disparities.

This Court has sentenced several other members of the Oath Keepers that cooperated with the Government's investigation to terms of probation. Mr. Wilson recognizes other cooperators were called to testify at trials. However, as argued above, Mr. Wilson debriefed with the Government on numerous occasions and testified to the Grand Jury. Mr. Wilson spent two days with prosecutors preparing for potential trial testimony and traveled to Washington, D.C. during the trial of Stewart Rhodes and other co-defendants to be available if called to testify by the Government. A sentence of 12 months of home confinement and a lengthy period of probation is appropriate in his case to avoid sentencing disparities. Such a sentence would acknowledge Mr. Wilson did not actually testify at trial by imposing a longer period of home detention than was imposed on other similarly situated defendants.

### III. CONCLUSION

For the reasons outlined herein, including Mr. Wilson's lack of criminal history, his military service and service as a first responder, and his acceptance of responsibility and cooperation, undersigned counsel respectfully requests that the Court impose a sentence of probation in this case. Specifically, Mr. Wilson requests that the Court sentence him to 12 months of home confinement and 36 months of probation. This sentence would reflect a Guideline sentencing level of 11 in Zone B, which is 2 levels below the Government's recommendation. Mr. Wilson contends such a sentence would be sufficient, but not greater than necessary to address the

sentencing factors set forth in 18 U.S.C. § 3553(a) and would be consistent with the sentences this Court has imposed on similarly situated defendants.

WHEREFORE, based on the preceding arguments as supported herein by both facts and authorities, and based on the PSR's factual information, and in consideration with the factors set out in 18 U.S.C. § 3553(a), Mr. Wilson respectfully requests that the Court:

1. Impose a probationary sentence on Mr. Wilson with 12 months of home confinement;

2. Find that the $200 special assessment and restitution of $2,000.00 to the Architect of the Capitol have been satisfied by Mr. Wilson's pre-sentence payment;

3. If the Court determines a fine is appropriate, impose a fine at the low end of the applicable fine range; and

4. Grant Mr. Wilson such other and further relief as it may deem just, proper, and reasonable.

Respectfully submitted, this 9th day of December, 2024.


MAYNARD NEXSEN, PC

By:  /s/ Christian E. Dysart          /s/ Geoffrey Ryan Willis
     CHRISTIAN E. DYSART              GEOFFREY RYAN WILLIS
     N.C. State Bar No. 36734         N.C. State Bar No. 33004
     cdysart@maynardnexsen.com        rwillis@maynardnexsen.com
     4141 Parklake Ave., Suite 200    4141 Parklake Ave., Suite 200
     Raleigh, NC  27612               Raleigh, NC 27612
     Telephone: (919) 747-8380        Telephone: (919) 747-8380
     Facsimile: (919) 882-1222        Facsimile: (919) 882-1222
     *RETAINED ATTORNEY FOR*          *RETAINED ATTORNEY FOR*
     *DEFENDANT*                      *DEFENDANT*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** was filed with the Clerk of Court for the District of Columbia using the CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

> Kathryn Leigh Rakoczy
> United States Attorney's Office
> 555 Fourth Street, NW
> Washington, DC 20530
> Phone:  (202) 252-6928
> Email:  kathryn.rakoczy@usdoj.gov

This, 9th day of December, 2024.

> MAYNARD NEXSEN, PC
>
> By:  /s/ Geoffrey Ryan Willis
> GEOFFREY RYAN WILLIS
> N.C. State Bar No. 33004
> Email: rwillis@maynardnexsen.com
> 4141 Parklake Ave., Suite 200
> Raleigh, NC  27612
> Telephone: (919) 747-8380
> Facsimile: (919) 882-1222
> *RETAINED ATTORNEY FOR*
> *DEFENDANT*